**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 08-00220 MMM | | Date | May 27, 2008 |
|---|---|---|---|---|

Present: The Honorable    MARGARET M. MORROW

Interpreter:    N/A

| ANEL HUERTA | N/A | Michael R. Wilner (NP) |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| HYUN PARK | NOT | | ✗ | RONALD RICHARDS | NOT | | ✗ |

**Proceedings:    Order Re: Motion *In Limine***

Defendant Hyun Park is charged with one count of bank fraud in violation of 18 U.S.C. § 1344, and one count of loan fraud in violation of 18 U.S.C. § 1014.  Both counts concern a loan Park sought and obtained from United Commercial Bank.  In the course of obtaining the loan, Park falsely stated that he had not filed a prior bankruptcy petition.  He also deliberately concealed that he had conducted business under a different identity.

In anticipation of trial, the government has filed a motion *in limine* seeking to exclude evidence and argument concerning a civil settlement between Park and United Commercial Bank.  The government contends the evidence is not admissible under Rules 408(a) and 403 of the Federal Rules of Evidence.

**I.  FACTUAL BACKGROUND**

The indictment alleges that at all relevant times, Hyun Park, also known as Chong Han Lim, John Park, and Jeonpak Love, was the principal and owner of L. Christopher Corp., a Los Angeles-based importer of garments, handbags, and fashion accessories from South Korea.[1]  United Commercial Bank ("UCB") was a bank, the deposits of which were insured by the Federal Deposit Insurance Corporation.[2]  Beginning in September 2000, Park applied

---

[1]Indictment, ¶ 2.

[2]*Id.*, ¶ 1.

for a commercial line of credit from UCB on behalf of L. Christopher.[3]  Park personally guaranteed L. Christopher's repayment to UCB of funds borrowed under the line of credit.[4]  Park allegedly made numerous misrepresentations to UCB on the initial credit application, as well as subsequent applications to increase the maximum amount of the credit line.[5]  Specifically, (1) Park stated that he had never filed a petition for bankruptcy, when in fact he had conducted business under a different name, using a different social security number, and had filed a petition for bankruptcy  under that name; (2) Park falsely stated that L. Christopher had no other outstanding loans or lines of credit; and (3) Park stated on the loan applications that he was single, when he had been married for several years.[6] In reliance on Park's statements and omissions, UCB loaned L. Christopher more than $2 million in 2000 and 2001.[7] L. Christopher defaulted on the line of credit in late 2001 and in May 2002, both L. Christopher and Park filed for bankruptcy.[8]

As noted, the indictment charges Park with bank fraud in violation of 18 U.S.C. § 1344 and loan fraud in violation of 18 U.S.C. § 1014.[9]

## II. DISCUSSION

### 1.    Civil Settlement Agreement

UCB filed an adversary complaint against Park in his bankruptcy proceeding, seeking to recover its losses following the L. Christopher's default on the loan.[10]  UCB sought $2.6 million in principal, interest, and expenses from Park.[11]  In May 2003, the parties entered into a settlement agreement pursuant to which Park agreed to pay $500,000 in return for a general release of liability from the bank.[12]

Shortly thereafter, the bank entered into a second agreement.  In June 2003, UCB and Park's mother, Jung Yim Yoon, executed an agreement pursuant to which the bank agreed to sell the original defaulted L.

---

[3]*Id.*, ¶ 4(a).

[4]*Id.*

[5]*Id.*, ¶ 4(b)-(c).

[6]*Id.*, ¶ 4(c).

[7]*Id.*, ¶ 4(d).

[8]*Id.*

[9]*Id.* (counts 1 & 2).

[10]Government's Motion to Preclude Civil Settlement Statements ("Pl.'s MIL") at 5.

[11]*Id.*

[12]*Id.*

Christopher loan contract to Park's family.[13]  In return, UCB received an additional $300,000.[14]  Park, however, required that UCB sign a statement of "facts" regarding the history of the loan that UCB had made to him and his company ("the Settlement Statement").[15]  A UCB executive signed this document in June 2003.[16]

In the Settlement Statement, UCB made a number of statements regarding its decision to lend money to Park, as well as the settlement of its lawsuit against him.  The bank stated that it had "made its peace with the Guarantor and dismissed its bankruptcy adversary proceeding against him" in exchange for a financial settlement.[17]  It also confirmed that it did not discover the existence of Park's prior identity and bankruptcy filing until after he had defaulted on the bank loan.[18]

The Settlement Statement includes several representations that are relevant to the materiality element of the bank fraud charge against Park.  The document reports that UCB's records "do not reflect that it ever inquired whether the Guarantor [defendant Park] had previous or other names or social security numbers."[19]  It also states that when the bank loaned money to L. Christopher, it "did not contemplate that the Guarantor would be a primary source of repayment" for the loan.[20]  Finally, the Statement notes that the bank might "have made the loan to the Borrower [L. Christopher] even if it were aware of the Guarantor's previous name and other social security number."[21]  It concedes that "the Bank is uncertain whether any misrepresentations were made by the Guarantor."[22]

## 2.      Whether Evidence of the Civil Settlement Should be Excluded Under Rule 408(a)

To convict Park of bank fraud, the government will have to prove that Park's statements to UCB were

---

[13]*Id.*

[14]*Id.*

[15]*Id.*  Park states that "[a]t the time of the settlement, [he] was careful to obtain, and the victim was agreeable [to], a clarification of the factual record so that in the event of a criminal prosecution, certain factual issues would be resolved."  (Defendant JeonPak Love's Opposition to Government's Motion to Preclude Civil Settlement Statements ("Def.'s Opp.") at 1).

[16]Pl.'s MIL at 5-6.

[17]*Id.* at 6, Exh. 9.

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.* at 6-7, Exh. 9.

[22]*Id.* at 7, Exh. 9.

material to the bank's decision to make the loan to L. Christopher.[23]  The government intends to offer testimony by UCB loan officers and executives to establish this fact.  Most significantly, William McGoldrick, the UCB executive who signed the Settlement Statement, is expected to testify that "UCB relies on the personal guarantee" of an individual who promises to repay a loan issued to a customer.  He also intends to state that "UCB does not loan money to someone who has filed bankruptcy within the past 7 years" because of the increased risk of default and non-payment.[24]  McGoldrick believes that had Park truthfully disclosed his prior bankruptcy, UCB would have "red flagged" his application and "may have denied Park the loan."[25]

The government anticipates that Park will seek to introduce evidence of his civil settlement with UCB to rebut its proof of materiality and to impeach McGoldrick's expected testimony with the inconsistent Settlement Statement.  It therefore seeks to exclude evidence of the Settlement Statement under Rule 408(a) of the Federal Rules of Evidence.[26]

Rule 408 states:

"(a) Prohibited uses. – Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
    (1) furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
    (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
(b) Permitted uses. – This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a).  Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution."  FED.R. EVID. 408.

The government maintains that, although it was not a party to the civil settlement, it may invoke Rule

---

[23]*Id.* at 8.  The elements of bank fraud under 18 U.S.C. § 1344 are: (1) defendant knowingly made up or carried out a scheme to defraud a bank, or to obtain money or property owned by or under the custody or control of a bank, by false promises or statements; (2) defendant knew that the statements were false; (3) the promises or statements were material, that is they would reasonably influence a bank to part with money or property; (4) defendant acted with intent to defraud; and (5) the bank was federally insured.  (*Id*. at 7-8) (citing Ninth Circuit Model Jury Instruction § 8.106 (2003)).  Materiality, by contrast, is not an element of loan fraud under 18 U.S.C. § 1014.  (*Id*. at 8 n. 26).

[24]*Id.* at 8.

[25]*Id.*

[26]*Id.* at 10.

408 because the rule applies even where the litigants in the present case were not parties to the original settlement.  See *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990) ("Rule 408 does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise," citing *United States v. Contra Costa County Water District*, 678 F.2d 90, 92 (9th Cir. 1982)); *Green v. Baca*, 226 F.R.D. 624, 640 (C.D. Cal. 2005).

### a.    Whether Rule 408 Applies to Criminal Cases

Park argues that Rule 408 is inapplicable in criminal cases.[27]  He notes that several Courts of Appeal have held that Rule 408 does not apply to criminal cases.[28] See *United States v. Logan*, 250 F.3d 350, 367 (6th Cir. 2001) ("[W]e conclude, as have the Second and Seventh Circuits, that Rule 408 does not serve to prohibit the use of evidence from settlement negotiations in a criminal case"); *Manko v. United States*, 87 F.3d 50, 54-55 (2d Cir. 1996) ("The primary purpose of Rule 408 is the 'promotion of the public policy favoring the compromise and settlement of disputes' that would otherwise be discouraged with the admission of such evidence.  Rule 408, advisory committee's notes.  To further this goal, evidence that is otherwise probative is excluded from civil lawsuits.  Nonetheless, as we stated in *Gonzalez*, the policy that underlies Rule 408 does not apply to criminal prosecutions.  The policy favoring the encouragement of civil settlements, sufficient to bar their admission in civil actions, is insufficient, in our view, to outweigh the need for accurate determinations in criminal cases where the stakes are higher.  It makes no difference, in this regard, whether the settlement evidence is being offered by the government, as in *Gonzalez*, or by the defense, as in this case.  Thus we reaffirm our conclusion in [*United States v. Gonzalez*, 748 F.2d 74 (2d Cir. 1984),] that the underlying policy considerations of Rule 408 are inapplicable in criminal cases"); *United States v. Prewitt*, 34 F.3d 436, 439 (7th Cir. 1994) ("The clear reading of [Rule 408] suggests that it should apply only to civil proceedings, specifically the language concerning validity and amount of a claim. . . .  Nothing in Rule 408 specifically prohibits the receipt of evidence in criminal proceedings concerning the admissions and statements made at a conference to settle claims of private parties," citing *Gonzalez*, 748 F.2d at 78 (2d Cir. 1984)).

Not all circuits have accepted this view, however.  The Fifth, Tenth, and Eleventh Circuit Courts of Appeal have applied Rule 408 in criminal proceedings.  See *United States v. Arias*, 431 F.3d 1327, 1336-37 (11th Cir. 2005) ("[W]e are persuaded that Rule 408 applies to both criminal and civil proceedings.  First, the plain language of Rule 1101(b) renders each of the Federal Rules of Evidence – including Rule 408 – generally

---

[27]Def.'s Opp. at 5.

[28]The Ninth Circuit has not explicitly addressed Rule 408's applicability in criminal proceedings.  The Ninth Circuit appears, however, to be of the view that Rule 408 applies in criminal cases, as seen by its discussion of the rule in the appeal of a criminal prosecution for violation of the Clean Air Act and Clean Water Act.  See *United States v. Technic Services, Inc*., 314 F.3d 1031, 1045 (9th Cir. 2002) (discussing the stipulated admission of a settlement agreement, and noting that "Federal Rule of Evidence 408 does not require the exclusion of evidence produced in the course of settlement negotiations if that evidence is 'offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.'"  Here, Exhibit 2 was introduced for 'another purpose' – that of proving Rushing's obstruction of the EPA's investigation").

applicable to criminal cases and proceedings.[29]  Furthermore, where the drafters of the Rules intended to prevent the application of a particular Rule to criminal cases, they provided so expressly. . . .  Second, the last sentence of Rule 408 specifically states that the Rule 'does not require exclusion when the evidence is offered for another purpose, such as . . . proving an effort to obstruct a criminal investigation or prosecution.'  Indeed, the advisory committee's notes explain that evidence of 'an effort to "buy off" the prosecution or a prosecuting witness in a criminal case' provides one example of evidence that is generally subject to Rule 408, but that is rendered admissible by the Rule's last sentence.  If the drafters of Rule 408 intended the Rule to apply solely in civil cases, there would be no occasion to carve out an exception for certain circumstances in criminal cases, much less to add an advisory note directly concerning the Rule's effect in criminal cases" (citations omitted)); *United States v. Bailey*, 327 F.3d 1131, 1146 (10th Cir. 2003) (holding that Rule 408 prevents the introduction of settlement agreements in a criminal proceeding); *United States v. Hays*, 872 F.2d 582, 588-89 (5th Cir. 1989) (same).

Moreover, the Seventh Circuit recently called its prior holding in *Prewitt* into doubt, citing an amendment to Rule 408 promulgated by the Supreme Court in 2006.  See *United States v. Roti*, 484 F.3d 934, 936 (7th Cir. 2007).  The court noted that, as amended, Rule 408(a)(2) expressly creates a partial exemption for criminal cases, showing "that the rest of the rule applies to both civil and criminal litigation."  *Id.*  It also observed that "[t]he Committee Note accompanying the amended Rule 408 explains that this was done because the Committee agreed with the result of *Prewitt*, which concluded that admissions of fault made in compromise of a civil securities enforcement action were admissible against the accused in a criminal action for mail fraud, but not [with] *Prewitt's* view that Rule 408 is wholly inapplicable to criminal prosecutions").

The court agrees with the Seventh Circuit in *Roti* that the text of Rule 408, as amended, demonstrates that Rule 408 applies in criminal as well as civil cases.[30]  Indeed, the 2006 Advisory Committee Note states this explicitly:

"[S]tatements made during compromise negotiations of other disputed claims are not admissible in subsequent criminal litigation, when offered to prove liability for, invalidity of, or amount of those claims.  When private parties enter into compromise negotiations they cannot protect

---

[29]Rule 1101(b) states that "[t]hese rules apply generally to civil actions and proceedings, including admiralty and maritime cases, [and] to criminal cases and proceedings."

[30]Prior to the 2006 amendment, the text of Rule 408 was as follows:
"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.  This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.  This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

against the subsequent use of statements in criminal cases by way of private ordering.  The inability to guarantee protection against subsequent use could lead to parties refusing to admit fault, even if by doing so they could favorably settle the private matter.  Such a chill on settlement negotiations would be contrary to the policy of Rule 408." 2006 Advisory Committee Note.

Because the court concludes that Rule 408 applies to the bank's statements regarding settlement of its civil lawsuit against Park, it next considers Park's argument that he seeks to offer the evidence for a "permissible purpose" delineated in the rule.

### b.     Whether Park May Introduce Evidence of the Settlement for "Another Purpose"

Park asserts that he seeks to admit evidence of his civil settlement with UCB for a purpose other than "to prove the validity of the claim, the invalidity of the claim, or the amount of damages."[31]  He correctly notes that evidence of settlements or offers of compromise may be introduced to prove the bias, prejudice, or interest of a witness, *Hudspeth*, 914 F.2d at 1214; to explain or excuse undue delay, *Freidus v. First Nat'l Bank of Council Bluffs*, 928 F.2d 793, 795 (8th Cir. 1991); see also *Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 484 (7th Cir. 2000); and to prove notice, *United States v. Austin*, 54 F.3d 394, 399-400 (7th Cir. 1995).

Park, however, does not allege that he seeks to admit evidence of the civil settlement for any of these permissible purposes.  On the contrary, he states that he seeks to admit the evidence for purposes the rule prohibits – to show the invalidity of the government's bank fraud claim and to impeach the government's witness, McGoldrick, with prior inconsistent statements.  Park notes that to prevail on the bank fraud claim, the government must prove that his false statements were material to the bank; he maintains that "[t]he contentions contained in the [Settlement] Statement directly [concern] the materiality of the allegedly misleading facts that relate to the 2001 loan."[32]  Additionally, Park states that "[i]f the government is successful in the preclusion of the [Settlement] Statement, [he] is without any evidence to refute the witnesses['] inconsistent statements and will be unduly prejudiced."[33]  Under the plain text of Rule 408, Park may not admit evidence of the settlement for these purposes.  See *Karen Cook v. CTC Communications Corp.*, Civil No. 06-cv-58-JD, 2007 WL 3252829, *6 (D.N.H. Oct. 31, 2007) (holding that evidence of another employee's settlement of employment-related claims against plaintiff's employer was not admissible to prove whether the other employee had a legitimate claim against the employer, what motive or intent the employer had for terminating her, or whether the employee was lying about her claim against the employer, e.g., whether her testimony was credible); compare *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) ("Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon.

---

[31]Def.'s Opp. at 5.

[32]*Id.* at 8.

[33]*Id.* at 9.

Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief.  This is perfectly acceptable under Rule 408" (footnote omitted)).

Although, at the hearing, Park asserted that he wished to offer evidence of the Settlement Statement to prove McCormick's bias, he could not articulate the basis for this claim, and it appears factually to have no merit.  *Cook* is instructive in assessing the claim.  There, plaintiff in an employment action asserted that evidence of another employee's settlement of employment-related claims against their common employer was admissible, *inter alia*, to prove the employee's bias in testifying favorably for the employer.  The court held that Rule 408 did not preclude plaintiff from offering evidence of the settlement to show that "the terms of the settlement agreement [had] affect[ed] [the other employee's] testimony."  *Cook*, 2007 WL 3252829 at \*6; see also *Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222( LAP) (THK), 1996 WL 337277, \*3 (S.D.N.Y. June 19, 1996) (finding that a witness' settlement with plaintiffs was relevant to show bias because, in exchange for a nominal sum and the witness' cooperation, plaintiffs agreed to dismiss claims against him that could have resulted in a substantial judgment).  Were McCormick being called by Park to testify favorably for him, the situation would be akin to that which confronted the court in *Cook*, and the government might well be able to admit the Settlement Statement to prove bias, i.e., to show that McCormick's favorable testimony resulted from Park's willingness to pay additional amounts on the loan.  In reality, however, McCormick intends to testify adversely to Park's interests.  Logic dictates that Park cannot show that such testimony is the product of a settlement that netted additional monies for McCormick's bank.

Park argues that Rule 408 has never been used to preclude evidence of out-of-court statements made by a third party who is testifying as a witness in a criminal prosecution to "protect" the government from undue prejudice.[34]  He contends that this use of the rule is "illogical and contrary to the purpose of the Federal Rules as applied to criminal prosecutions."[35]  The 2006 Advisory Committee Note, however, states that the rule, as amended, expressly "prohibits the use of statements made in settlement negotiations when offered to impeach by prior inconsistent statement or through contradiction.  Such broad impeachment would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements."  FED. R. EVID. 408, 2006 Advisory Committee Note (citing MCCORMICK ON EVIDENCE at 186 (5th ed. 1999) ("Use of statements made in compromise negotiations to impeach the testimony of a party, which is not specifically treated in Rule 408, is fraught with danger of misuse of the statements to prove liability, threatens frank interchange of information during negotiations, and generally should not be permitted"), and *EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1545-46 (10th Cir. 1991) (holding that a letter sent as part of settlement negotiation could not be used to impeach defense witnesses by contradiction or as a prior inconsistent statement because such impeachment would undermine the policy of encouraging uninhibited settlement negotiations).  Courts have underscored this point, noting that "statements or admissions made in an offer of compromise will not be admissible as substantive evidence in the case to prove or disprove liability, because the party to whom the statement is attributable 'may be motivated by a desire for peace rather than from any concession of weakness of position.'" *Alcan Intern. Ltd. v. S.A. Day Mfg. Co., Inc.*, 179 F.R.D. 403, 404 (W.D.N.Y. 1998) (quoting Notes of Advisory Committee on 1972 Proposed Rules).

---

[34]*Id.* at 7.

[35]*Id.*

The Committee Note also emphasizes that the purpose of the rule is not necessarily to protect the party seeking to exclude the evidence, e.g., the government in this case, but rather to protect the parties to the settlement, whether or not they are parties to the present litigation. "The amendment makes clear that Rule 408 excludes compromise evidence even when a party seeks to admit its own settlement offer or statements made in settlement negotiations. If a party were to reveal its own statement or offer, this could itself reveal the fact that the adversary entered into settlement negotiations. The protections of Rule 408 cannot be waived unilaterally because the Rule, by definition, protects both parties from having the fact of negotiation disclosed to the jury." *Id.* The rule is thus designed to protect both Park and UCB.

As the government notes, it does not does not intend to offer the civil settlements or the Settlement Statement to show that Park's repayment of the defaulted loan and settlement of UCB's adversary suit proves he committed the charged offenses.[36] Because Park apparently seeks to admit evidence of his civil settlement with UCB only for purposes prohibited by Rule 408, the court grants the government's motion *in limine.*[37]

---

[36]See Pl.'s MIL at 10 n. 33. The court appreciates Park's frustration with the fact that UCB made statements to obtain further payment from him, and now seeks to have its representatives testify contrary to those statements. This does not change the fact, however, that Park seeks to introduce the settlement solely for purposes that are disallowed under Rule 408.

A party's attempt to induce another party to take action in connection with a settlement is not always inadmissible under Rule 408. If, for instance, during the settlement negotiations, UCB induced Park to take unlawful action that formed the basis of the charges against him, evidence of the settlement and/or negotiations would be admissible to show his state of mind. See, e.g., *Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 484 (7th Cir. 2000) ("The purpose of Rule 408 is to encourage settlements. Settlements will not be encouraged if one party during settlement talks seduces the other party into violating the contract and then, when a settlement ultimately is not reached, accuses the other party at trial of violating the contract. To use Rule 408 to block evidence that the violation of the contract was invited would be unfair. The need for Universal to explain it thought a settlement had been reached allowing it to roll over accounts – without allowing any details about the settlement talks or even use of the word 'settlement' – outweighed any potential for discouraging future settlements and did nothing to undermine the purpose and spirit of Rule 408. The admission of Rothberg's testimony that touched on settlement negotiations was not, in our view, grounds for ordering a new trial"); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 294 (2d Cir. 1999) (admitting settlement evidence in a trademark infringement case to prove defendant's claims of contractual and equitable estoppel related to the settlement); *Uforma/Shelby Business Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293-94 (6th Cir. 1997) (Rule 408 is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions," quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5314 (1st ed. 1980)). Park's conduct in connection with the settlement, however, does not form the basis of the charges against him. Thus, while Park might have a valid civil claim against the bank for fraudulently inducing him to pay additional monies in settlement, he cannot introduce the Settlement Statement at his criminal trial to show that his false statements and/or omissions were not material to the bank in making the loan, or to challenge McGoldrick's credibility.

[37]The court is unpersuaded by Park's additional arguments. First, Park contends that "UCB's thoughts prior to making the loan are not covered," because "an agreement that was made before a dispute arose is not covered by Rule 408." (Def.'s Opp. at 5) (citing *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1342 (9th Cir.

9

### 3.       Whether Evidence of the Civil Settlement Should be Excluded Under Rule 403

Evidence of the civil settlement statements must also be excluded  under Rule 403.  Under Rule 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  FED. R. EVID. 403.  "Trial judges are given broad discretion in applying [Rule] 403," which is generally designed to favor admissibility.  Christopher B. Mueller & Laird C. Kirkpatrick, EVIDENCE § 4.9, at p. 193 (2d ed. 1999).  Here, the parties dispute the circumstances under which the Settlement Statement was obtained.  The government asserts that UCB signed the Settlement Statement to obtain further payment from Park on the defaulted loan.[38]  Park, by contrast, counters that the statement was heavily negotiated and drafted to establish a clear and truthful record of the bank's conduct and procedures in making the loan.[39]

Particularly in light of this dispute, the court concludes that the probative value of the Settlement Statement is substantially outweighed by the likelihood that its admission would result in confusion of the issues.  First, the Settlement Statement is not a contemporaneous declaration of the bank's motivations in making the loan, and therefore is only indirectly probative of the facts that were material to the bank at the time it made the loan.  Second, even if Park were able to identify a permissible purpose for admitting the Settlement Statement under Rule 408, the court would have to give limiting instructions that might lead to jury questions or confusion.  Third, given the disputed facts surrounding the settlement itself, the court would effectively have to conduct a mini-trial regarding Park's settlement negotiations with UCB to establish the purpose for which the statement was created, and whether it reflects the bank's true view of the materiality of Park's representations.  This will result in distraction and jury confusion.  Accordingly, the court excludes the settlement statement under Rule 403 as well.  See, e.g., *Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F.Supp.2d 1253, 1259 (D. Colo. 2003) ("At trial, a party's settlement offer could not be considered in a

---

1987)).  Park, however, seeks to admit statements by UCB *after* the loan was made, Park defaulted, and litigation ensued.  While the statements may concern UCB's state of mind prior to making the loan, the statements themselves were negotiated and obtained as part of the settlement.  They are not contemporaneous statements regarding UCB's "thoughts about the loan" before or at the time the loan was made.

Second, Park argues that Rule 408 "does not protect ordinary business negotiations" and "[t]his was a business negotiation by the bank and the defendant.  (*Id.*) (citing *Deer & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557 (Fed. Cir. 1983)).  This argument is also unavailing, as the Settlement Statement was the product not just of an "ordinary business negotiation," but of a settlement pursuant to which "the Bank made its peace with the Guarantor and dismissed its bankruptcy adversary proceeding against him."  (Pl.'s MIL, Exh. 9). The agreement states that "[w]ithout acknowledging any liabilities, the parties have entered into an agreement to settle all of their differences."  (*Id.*).  It thus clearly falls within the scope of Rule 408 because it is evidence of the "furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim."  See FED. R. EVID. 408(a)(1).

[38]Pl.'s MIL at 16.

[39]Def.'s Opp. at 9.

vacuum, but rather would have to be evaluated in the full context of settlement negotiations. That would necessarily involve testimony explaining negotiation strategies and the thought processes of the settlement participants. The parties might well feel compelled to offer testimony from their respective counsel to explain their settlement strategies and the rationale for any offers or counter-offers. Jury confusion seems inevitable"); cf., e.g., *Turner v. Univ. of Washington*, C 05-1575 RSL, 2007 WL 2984684, *1 (W.D. Wash. Oct. 10, 2007) ("The Court also excludes the Westminster information under Fed.R.Evid. 403 because the Court finds that the marginal probative value of fifteen-year-old material is substantially outweighed by the risk of unfair prejudice to plaintiff and would result in confusion of the issues. In order to admit the Westminster information, the Court would also effectively have to conduct a mini-trial on the facts at issue in the 1991 District of Utah case, which would both confuse the number fact-intensive allegations in this case, . . . and result in undue delay").

## III.  CONCLUSION

For the reasons stated, the court grants the government's motion *in limine* to preclude civil settlement statements.

---